# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNEX, INC.; CAVALIER MOBILE ESTATES,<br><br>                                  Plaintiffs,<br>   vs.<br><br><br><br>CITY OF OCEANSIDE; OCEANSIDE MANUFACTURED HOME FAIR PRACTICES COMMISSION; et al.,<br><br>                                  Defendants. | CASE NO. 10-CV-1478 JLS (CAB)<br><br>**ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**<br><br>(Doc. Nos. 5, 5-2, 8) |

     Presently before the Court is Defendants City of Oceanside and Manufactured Home Fair Practices Commission's (collectively, Defendants') motion to dismiss. (Doc. No. 5.) Also before the Court are Plaintiffs' opposition and Defendants' reply. (Doc. Nos. 7 (Opp'n), 9 (Reply).) Having fully considered the parties' arguments and the law, the Court **GRANTS** Defendants' motion to dismiss.

## BACKGROUND

     Defendant City of Oceanside (City) enacted Ordinance 82-27 in response to a perceived shortage of rental spaces for the location of manufactured homes. OCEANSIDE, CAL., CODE § 16B.1(a) [hereinafter Ordinance 82-87]. "This inequitable market situation . . . resulted in low vacancy rates

and contributed . . . to rapidly escalating rents." *Id.* Ordinance 82-27 aims to "protect the owners and residents of manufactured homes from unreasonable space rental increases while simultaneously recognizing and providing for the need of park owners to receive a just and reasonable return on their property." *Id.* § 16B.1(d).

Ordinance 82-27 sets a rental base or "space rent ceiling" using the rent that a park owner charged on December 31, 1979. *Id.* § 16B.8. When Ordinance 82-27 went into effect, park owners were entitled to an initial adjustment of the space rent ceiling equal to the lesser of (1) an eight percent increase per year since the base year or (2) the percentage increase of the Consumer Price Index (CPI) from the end of the base year. *Id.* § 16B.9(b)(1). From 1983 on, park owners are entitled to an annual adjustment of the space rent ceiling equal to the lesser of (1) an eight percent increase per year or (2) 75% of the percentage increase in the CPI for the calendar year in which the adjustment application is filed. *Id.* § 16B.9(c)(1). If a park owner "believes he would not receive a just and reasonable return on his investment in the park after receiving the maximum permissive adjustment . . . , a park owner may file an application with the [Manufactured Homes Fair Practices Commission (MHFPC)] for an alternative adjustment of the of the space rent ceiling based upon the park's net operating income (NOI)." *Id.* § 16.B.9(c)(2); *see also id.* § 16.9(b)(2) (providing for initial adjustment of the space rent ceiling based on NOI). In the event that application of the permissive and NOI adjustments does not result in a just and reasonable return to the park owner, the park owner may apply for an additional "special adjustment." *Id.* § 16B.10(d).

Plaintiff Dunex, Inc. is the general partner of Plaintiff Cavalier Mobile Estates (CME), a California limited partnership (collectively, Plaintiffs). (Doc. No. 1 (Compl.) ¶ 3.) Plaintiff CME owns Cavalier Mobile Estates (the Park), a mobile home park located in Oceanside, California. (*Id.*) In 2008, pursuant to Ordinance 82-27, Dunex submitted a special adjustment application for the Park. (*Id.* ¶¶ 3, 13.) Dunex's application proposed three alternative adjustment methodologies, which would have increased the Park's space rent ceiling between $68.81 and $320.00 per space, per month. (*Id.* ¶¶ 13(a)–(c).)

The City hired outside consultant Dr. James Gibson to evaluate Dunex's application. (*Id.* ¶ 15.) Based on the financial information included in Dunex's application and the Park's tax basis,

Dr. Gibson concluded that Plaintiffs were earning a just and reasonable return on their investment in the Park. (*Id.* ¶ 16.) Based on Dr. Gibson's conclusion, City staff prepared a report recommending that the MHFPC deny Dunex's application. (*Id.* ¶ 17.) After a public hearing on Dunex's application, the MHFPC adopted Resolution 09-R0237-MHFP. (*Id.* ¶¶ 18–19.) In adopting the resolution, the MHFPC agreed that Plaintiffs were earning a just and reasonable return and therefore were not entitled to a special adjustment. (*Id.* ¶ 19.)

On April 29, 2009, Plaintiffs appealed the MHFPC's decision. (*Id.* ¶ 20.) The hearing officer, retired San Diego Superior Court Judge Kevin Midlam, denied Plaintiffs' appeal. (*Id.* ¶¶ 20–21; *see* Doc. No. 5-2 (Def.'s RJN) Ex. D, at 9–10.) Judge Midlam concluded that the MHFPC's evidence that Plaintiffs were earning a just and reasonable return was, in the context of rent control, "more credible and consistent with the purpose of such regulation than that of [Plaintiffs'] experts." (Def.'s RJN Ex. D, at 10.)

In August 2009, Plaintiffs petitioned for a writ of administrative mandate pursuant to California Civil Procedure Code section 1094.5 challenging the Defendants' final decision to deny Dunex's special adjustment application. (Compl. ¶ 22; *see* Def.'s RJN Ex. A.) On June 29, 2010, San Diego Superior Court Judge Jacqueline Stern entered judgment denying Plaintiffs' petition. (Compl. ¶ 23; *see* Def.'s RJN Ex. C.) Judge Stern held that Dr. Gibson's report and testimony constituted substantial evidence supporting the MHFPC's and Judge Midlam's conclusions that Plaintiffs were earning a just and reasonable return and therefore were not entitled to a special adjustment. (*See* RJN Ex. C, at 8–10.) Plaintiff does not intend to appeal Judge Stern's decision.[1] (Opp'n 3 n.2.)

On July 16, 2010, Plaintiffs filed the instant complaint. (*See* Compl.) Plaintiffs' complaint alleges five causes of action: (1) an as-applied equal protection claim, (2) an as-applied private taking claim, (3) an as-applied regulatory taking claim, (4) an as-applied substantive due process claim, and

---

[1] Defendants initially argued in their motion to dismiss that the Court should dismiss Plaintiffs' claims under the *Younger v. Harris*, 401 U.S. 37 (1971), abstention doctrine. (Doc. No. 5-1 (Mem. ISO MTD) 5–6; *see Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 223 (9th Cir. 1994) ("*Younger* abstention applies to prevent federal intervention in a state judicial proceeding in which a losing litigant has not exhausted his state appellate remedies.").) Plaintiffs have mooted this argument by declining to exercise their state appellate remedies.

(5) an inverse condemnation claim.[2] (*Id.* ¶¶ 24–51.) On August 12, 2010, Defendants moved to dismiss Plaintiffs' complaint. (Doc. No. 5.)

## ANALYSIS

Defendants move to dismiss Plaintiffs' claims on three grounds. First, Defendants contend that Plaintiffs' taking claims are unripe. (Mem. ISO MTD 7–13; Reply 5–6.) Second, Defendants contend that the prior judgment in the state writ of mandate action (the state action) imposes a res judicata bar to Plaintiffs' claims in this action. (Mem ISO MTD 5–7; Reply 3–5.) And third, Defendants contend that Plaintiffs fail to state claims upon which relief can be granted. (Mem. ISO MTD 9–19; Reply 5–10.) The Court addresses Defendants' first two arguments and, finding them sufficient to support Defendants' motion to dismiss, declines to address the third.

**I.    Requests for Judicial Notice**

Both parties move the Court to take judicial notice of certain documents in ruling on Defendants' motion to dismiss. (*See* Def.'s RJN; Doc. No. 8 (Pl.'s RJN).) Generally on a motion to dismiss, a court may only consider three things: (1) "allegations contained in the pleadings," (2) "exhibits attached to the complaint," and (3) "matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).

Defendants ask the Court to take notice of (1) Plaintiffs' first amended petition for writ of administrative mandate in the state action (Def.'s RJN Ex. A); (2) the notice of entry of judgment in the state action (*id.* Ex. C); and (3) Judge Midlam's decision on Plaintiffs' appeal from Defendants' denial of Dunex's special adjustment application (*id.* Ex. D). Plaintiffs ask the Court to take notice of (1) the notice of entry of judgment in the state action (Pl.'s RJN Ex. 1); (2) Plaintiffs' first amended petition for writ of administrative mandate in the state action (*id.* Ex. 2); (3) Plaintiffs' memorandum

---

[2] The Court could arguably interpret Plaintiffs' complaint as stating both facial and as-applied challenges to Ordinance 82-27. (*See* Mem. ISO MTD 7–19 (addressing Plaintiffs' taking, equal protection, and substantive due process claims as both facial and as-applied claims).) However, Plaintiffs' opposition makes clear that their complaint only challenges Ordinance 82-27 as applied to Dunex's special adjustment application. (*See* Opp'n 2 ("Cavalier clearly and unambiguously alleges 'as applied' constitutional claims based on the City's application of rent control to Cavalier.").) Accordingly, the Court interprets Plaintiffs' complaint as only raising as-applied claims. *See Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 656 (9th Cir. 2003) (holding that complaint stated an as-applied challenge because it "allege[d] that the Ordinance, complex economic factors, and the [city's Rent Control] Commission's decision not to grant the bulk of Hacienda's rent increases all combined" to give rise to the alleged taking).

of points and authorities in support of their petition for writ of administrative mandate (*id.* Ex. 3); and (4) Plaintiffs' reply in support of their petition for writ of administrative mandate (*id.* Ex. 4). The Court finds that each of these documents is properly judicially noticed. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." (internal quotation marks omitted)); *see also* Fed. R. Evid. 201. They are matters of public record and the parties do not dispute the authenticity of any document. Accordingly the Court **GRANTS** the parties requests for judicial notice of the above-listed documents.

Both parties also ask the Court to take judicial notice of Ordinance 82-27. The Court has duly considered the ordinance and considers judicial notice of it improper. *See United States v. Marty*, 2009 WL 2365556, at *1 & n.3 (E.D. Cal. July 29, 2009) (finding judicial notice of statutes unnecessary). The parties requests for judicial notice of Ordinance 82-27 are therefore **DENIED**.

**II.     Plaintiffs' Regulatory Taking Claim Is Not Ripe**

  A.     Legal Standard

"Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under [Federal Rule of Civil Procedure] 12(b)(1) . . . ." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The plaintiff bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 538 F.3d 1107, 1110 (9th Cir. 2008). The Court must first determine whether it has jurisdiction, and must not reach the merits where jurisdiction is lacking. *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Orff v. United States*, 358 F.3d 1137, 1151 (9th Cir. 2004); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000).

Defendants' challenge to the ripeness of Plaintiffs' claims is facial instead of factual because Defendants "'assert[] that the allegations contained in [the] complaint are insufficient to invoke federal

jurisdiction.'" *Vander Kley v. AcStar Ins. Co.*, 2005 WL 139078, at *2 (D. Or. Jan. 21, 2005) (quoting *Safe Air for Everyone*, 373 F.3d at 1309). In the facial challenge, the defendant asserts the insufficiency of the complaint's allegations to invoke federal jurisdiction as a matter of law. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Cross v. Pac. Coast Plaza Invs., L.P.,* 2007 WL 951772, at *1 (S.D. Cal. Mar. 6, 2007). To adjudicate the facial challenge, the Court assumes the truth of the allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Whisnant*, 400 F.3d at 1177; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

B.  Discussion

  1.  *Private Taking Claim*

The Court can quickly dispose of Defendants' argument that Plaintiffs' private taking claim is not ripe. (*See* Mem. ISO MTD 8; Reply 5–6.) "Because a 'private taking' cannot be constitutional even if compensated, a plaintiff alleging such a taking [need not] seek compensation in state proceedings before filing a takings claim . . . ." *Armendariz v. Penman*, 75 F.3d 1311, 1321 n.5 (9th Cir. 1996), *abrogated on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005).[3] Accordingly, the Court finds Plaintiffs' private taking claim exempt from the ripeness requirement.

  2.  *Regulatory Taking Claim*

A regulatory taking claim is not ripe until (1) "the government entity charged with implementing the regulation has reached a final decision regarding the application of the regulations to the property at issue," and (2) the plaintiff has "[sought] compensation through the procedures the State has provided for doing so." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194 (1985). "A petitioner need not seek state remedies if to do so would be futile." *Manufactured Home Cmtys. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005) [hereinafter

---

[3] *See also Dahlen v. Shelter House*, 598 F.3d 1007, 1010 (8th Cir. 2010) ("Because no amount of compensation can remedy a private taking, resort to inverse condemnation in such cases is unnecessary." (citing *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997) (holding that property owners "need not pursue state procedures for a claim that the City took [their property] without a justifying public purpose, however, because this is a Constitutional violation even if compensation is paid."))); *Samaad v. City of Dallas*, 940 F.2d 925, 936–937 & n.27 (5th Cir. 1991) ("[P]laintiffs' failure to seek compensation for the alleged taking of their property for a private purpose does not render that claim unripe."); *cf. Montgomery v. Carter Cnty.*, 226 F.3d 758, 764–768 (6th Cir. 2000) ("[T]o the extent that Mary Nave's estate claims that its property was taken for a private use, the claim is ripe and the estate may sue immediately without resorting to state remedies . . . .").

1  *MHC*]. But "[t]he futility exception is narrow, and mere uncertainty does not establish futility." *Id.*

2  Dunex pursued its special adjustment application through the administrative process provided
3  by Ordinance 82-27. (*See* Compl. ¶¶ 13–18.) The MHFPC denied Dunex's application, and a hearing
4  officer denied Plaintiffs' appeal. (*Id.* ¶ 19–21.) These actions are sufficient to meet the first prong
5  of the *Williamson* ripeness test for Plaintiffs' regulatory taking claim.

6  However, Plaintiffs have not satisfied the second prong of the *Williamson* test "because they
7  have not attempted to obtain relief through the state procedure designed to provide compensation for
8  rent control losses." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1190
9  (9th Cir. 2008). Under *Kavanau v. Santa Monica Rent Control Bd.*, 941 P.2d 851 (Cal. 1997), a
10 property owner seeking compensation for a taking "must first file for a writ of administrative
11 mandamus in a state court, followed by an application for inverse condemnation damages." *Ventura*
12 *Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1053 n.7 (citing
13 *Carson Harbor Vill., Ltd. v. City of Carson*, 353 F.3d 824 (9th Cir. 2004) ) (citation omitted); *see also*
14 *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n.8 (1997) ("Ordinarily, a plaintiff must
15 seek compensation through state inverse condemnation proceedings before initiating a takings suit in
16 federal court . . . ."); *Adam Bros. Farming, Inc. v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1147–48
17 (9th Cir. 2010) ("When the state provides a procedure by which a party may seek just compensation,
18 such as an inverse condemnation cause of action, the plaintiff must seek relief in state court before
19 bringing a claim in federal court."). Here, although Plaintiffs petitioned for a writ of administrative
20 mandate, they did not bring an inverse condemnation action in state court. Instead, Plaintiffs
21 immediately fled to federal court after the state court denied their writ petition.[4] Plaintiffs' failure to
22 fully "seek compensation through the procedures the State has provided for doing so" forecloses
23 Plaintiffs' regulatory taking claim.[5] *Williamson*, 473 U.S. at 194.

---

[4] Notably, Plaintiffs' federal complaint alleges an inverse condemnation cause of action. (Compl. ¶¶ 47–51.)

[5] Plaintiffs suggest that they need not seek state remedies because to do so would be futile. (*See* Compl. ¶ 23 ("California has no remedy under state law that will prevent or remedy the confiscation of [Plaintiffs'] property.").) However, the Ninth Circuit has repeatedly held that the *Kavanau* adjustment procedure provides an adequate process for obtaining compensation for rent control losses. *See Equity Lifestyle Props.*, 548 F.3d at 1192 ("California's creation and

Plaintiffs claim that they satisfied the second *Williamson* requirement by including in their special adjustment application "an advisory to the City of Oceanside that by submitting the application, Plaintiffs were seeking 'state compensation' under the procedures provided by state law." (Compl. ¶ 14; *see* Opp'n 11.) The Court rejects this argument out of hand. California has established a specific procedure for obtaining compensation for rent control losses; Plaintiffs cannot circumvent this procedure simply by including a "request for state compensation" in their special adjustment application.

Plaintiffs also argue that the Court should exercise its prudential jurisdiction to hear Plaintiffs' regulatory taking claim, even if it is not ripe. (Opp'n 13–14.) Plaintiff correctly points out that the second prong of the *Williamson* ripeness test is prudential, rather than jurisdictional. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, — U.S. —, 130 S. Ct. 1592, 2610 (2010); *Suitum*, 520 U.S. at 733–34; *Guggenheim v. City of Goleta*, 582 F.3d 996, 1011 (9th Cir. 2009) ("Because the *Williamson* requirements are merely prudential, the claims can be waived."). However, the Court has discretion to waive the *Williamson* requirements, *see Adams Bros.*, 604 F.3d at 1148, and it declines to do so in the face of Ninth Circuit authorities finding similar claims unripe, *see, e.g.*, *Equity Lifestyle Props.*, 548 F.3d at 1190–92; *MHC*, 420 F.3d at 1034–36; *Ventura Mobilehome Cmtys.*, 371 F.3d at 1050–53; *Carson Harbor*, 353 F.3d at 826–30; *Hacienda Valley*, 353 F.3d at 657–61. *But see Adams Bros.*, 604 F.3d at 1148 (assuming without deciding that taking claim was ripe and reaching merits); *Guggenheim*, 582 F.3d at 1011–12 (waiving *Williamson* requirements as to facial taking claim because defendant "forfeited its claim that the case was not ripe for decision" and because record was "eminently ripe for review"). However, even if the Court did waive the second *Williamson* requirement as to Plaintiffs' regulatory taking claim, it would find that res judicata bars this claim.

**III.    The Judgment in the State Action Bars Plaintiffs' Claims in this Action**

---

implementation of the *Kavanau* adjustment process provides 'an adequate procedure for seeking just compensation, [and] the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied compensation.'" (quoting *Williamson*, 473 U.S. at 195) (alteration in original)); *Carson Harbor*, 353 F.3d at 830 ("At best, Carson Harbor has merely alleged that the new compensation procedures are 'untested or uncertain.' Under our precedents, that is not enough to qualify for an exemption from *Williamson*'s second ripeness requirement." (citation omitted)). Thus, Plaintiffs may not take advantage of the narrow futility exception.

A.     Legal Standard

A defendant may raise the affirmative defense of res judicata by motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Federal courts must afford full faith and credit to state court judgments. 28 U.S.C. § 1738; *San Remo Hotel, L.P. v. City and Cnty. of San Francisco*, 545 U.S. 323, 336 (2005). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Federal courts look to state law to determine the preclusive effect of a state court judgment. *MHC*, 420 F.3d at 1031. Accordingly, the Court applies California's res judicata law in ruling on Defendants' motion to dismiss. *See Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993).

California takes a primary rights approach to res judicata. *MHC*, 420 F.3d at 1031. Under the primary rights theory:

> A "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 306 (Cal. 2002) (quoting *Crowley v. Katleman*, 881 P.2d 1083, 1090 (Cal. 1994)). A party must bring all claims arising out of the same cause of action in a single suit; "if not brought initially, they may not be raised at a later date." *Id.* at 302; *see also Palomar Mobilehome Park Ass'n*, 989 F.2d at 364 ("California, as most states, recognizes that the doctrine of res judicata will bar not only those claims actually litigated in a prior proceeding, but also claims that could have been litigated.").

B.     Discussion

The Ninth Circuit's *Manufactured Home Communities* opinion guides the Court's res judicata analysis here. 420 F.3d at 1031–32. In *Manufactured Home Communities*, plaintiff owner of a mobile home park petitioned to increase the park's space rents over and above the ceiling imposed by San Jose's mobile home rent control ordinance. *Id.* at 1026. San Jose ultimately denied the plaintiff's rent increase petition, and the plaintiff petitioned for a writ of administrative mandate challenging San

Jose's denial of its rent increase petition.[6] *Id.* at 1026–27. The Superior Court denied the plaintiff's petition, and the California Court of Appeal affirmed. *Id.* at 1027–28. The Court of Appeal held that San Jose's rent control ordinance provided mobile home park owners with a fair return and that San Jose's administrative hearing officer did not unreasonably or unlawfully interpret the ordinance. *Id.* at 1028.

Having found the California courts unreceptive to its claims, the plaintiff decided to try its luck in federal court. In 2003, the plaintiff filed a complaint in the United States District Court for the Northern District of California. *Id.* The plaintiff's complaint alleged eight causes of action, including among others: (1) two substantive due process claims, (2) an equal protection claim, (3) an as-applied taking claim, and (4) a facial taking claim.[7] *Id.* at 1028–29, 1032 n.13. The district court dismissed these five claims as barred by res judicata. *Id.* at 1029.

The Ninth Circuit affirmed the district court's dismissal. The court concluded:

> MHC's claims in federal and state court all involve a single primary right: the right to receive a fair return on its investment at Westwinds. They all stem from a single injury MHC claims to suffer. MHC's claims all relate to a single Ordinance and the City's application of that Ordinance to MHC's petition for a rent increase. MHC's different Counts are simply different legal theories under which MHC may recover. Different theories of recovery are not separate primary rights. MHC has already litigated its right to a fair return in state court. . . . Additional theories of recovery based on MHC's right to a fair return may not be asserted in federal court.
>
> To adjudicate MHC's constitutional claim would require upsetting legal conclusions of the California courts regarding the Ordinance. The California Superior

---

[6] The complete facts are somewhat more complicated. *Manufactured Home Communities* actually involved two rent increase petitions, two denials, and two petitions for writs of administrative mandate. *See* 420 F.3d at 1026–28. After San Jose denied the plaintiff's first rent increase petition, the plaintiff sought a writ of mandate, and the Superior Court declared the rent control ordinance unconstitutional. *Id.* at 1026–27. San Jose then amended the ordinance to cure the defect, and the plaintiff again petitioned for a rent increase. *Id.* at 1027. When San Jose denied the plaintiff's second rent increase petition, the plaintiff sought a supplemental writ of mandate. *Id.* It was the supplemental writ action that ultimately precluded the plaintiffs' federal claims. *See id.* at 1032 (finding the plaintiff's federal claims barred because the plaintiff "already litigated its right to a fair return in the state court").

[7] Contrary to Plaintiffs' counsel's assertion at oral argument, *Manufactured Home Communities* expressly *did not* limit its res judicata analysis to the plaintiff's facial claims. *See* 420 F.3d at 1032 n.13 (describing the claims barred by res judicata as, among others, "substantive due process," "equal protection," and "*as-applied* takings" claims). The plaintiff's equal protection claim, which alleged that the City's ordinance "denied *MHC* equal protection . . . by according *MHC*'s property rights disparate and injurious treatment compared to other mobilehome park owners" was clearly an as-applied claim, *id.* at 1028 (emphasis added), as were the plaintiff's substantive due process claims, *see id.* (describing Counts I and III).

> Court and the California Courts of Appeal both held the City's Ordinance allows MHC to earn a fair return. . . . MHC's claims either have been or should have been raised in state court, and MHC is precluded from raising them in federal court.

*Id.* at 1031–32 (citations and footnote omitted).

Res judicata similarly forecloses Plaintiffs' federal claims here.[8] As in *Manufactured Home Communities*, Plaintiffs' claims in the state action and their claims in this action all involve a single primary right—the right to receive a just and reasonable return on their investment in the Park. All of Plaintiffs' claims unquestionably stem from a single injury—Defendants' denial of Dunex's special adjustment application. Plaintiffs' various causes of action are simply different legal theories under which it may recover. To paraphrase the Ninth Circuit, "[Plaintifffs have] already litigated [their] right to receive a [just and reasonable] return in [the state action]. . . . Additional theories of recovery based on [Plaintiffs'] right to a [just and reasonable] return may not be asserted in federal court." *Id.* at 1031–32. Plaintiffs could have raised their federal claims in state court.[9] *See Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781, 786 n.5 (9th Cir. 1989) ("[A] claim involving federal constitutional rights may be joined in a California mandamus action."). They may not now ignore well settled claim preclusion principles because they failed to do so.

Plaintiffs attempt to distinguish *Manufactured Home Communities* on three grounds. First, Plaintiffs argue that "the claims raised in the state action do not address the same primary right" as their federal claims. (Opp'n 8.) Plaintiffs contend that they "[do] not seek a review of the conclusion that [they are] earning a fair return or a review of the decision upholding the administrative decision. [Plaintiffs seek] damages based on the assumption that the decision denying a rent increase is a final enforceable decision." (*Id.* at 9.) The Court recognizes this argument for what it is—a misguided attempt to avoid the Ninth Circuit's holding in *Manufactured Home Communities*. Plaintiffs gain nothing by purportedly "not challeng[ing]" the "'fair return' determination" in the state action.

---

[8] Because the Court denies supplemental jurisdiction over Plaintiffs' inverse condemnation claim *infra*, the Court limits its res judicata analysis to Plaintiffs' federal claims.

[9] Although not necessary to its decision, the Court notes that Plaintiffs seem to have initially raised their federal claims in the state action. (*See* Def.'s RJN Ex. A ¶ 26 ("The wrongful actions of Defendants in interpreting and applying the City's rent control Ordinance . . . are failures to proceed in accordance with the Ordinance, [and] the Constitutions of the State of California *and of the United States* . . . ." (emphasis added)).)

(Opp'n 1.) If the Court held in Plaintiffs' favor on their taking, equal protection, and substantive due process claims, the Court would necessarily have to find that Ordinance 82-27 denies Plaintiffs a just and reasonable return.[10] *See Duquesne Light Co. v. Barash*, 488 U.S. 299, 307–308 (1989). Such a holding would require the Court to "upset [the] legal conclusions of the California courts" regarding Ordinance 82-27. *MHC*, 420 F.3d at 1032. Given that the Ninth Circuit sought to avoid exactly this situation in *Manufactured Home Communities*, Plaintiffs' assertion that it is not challenging the decision in the state action does not convince the Court that res judicata does not bar Plaintiffs' federal claims.

Second, Plaintiffs apparently claim that they reserved their right to litigate their federal claims in federal court under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 417 (1964). (*See* Opp'n 8 ("City's argument . . . would . . . improperly force property owners to litigate federal [§ 1983] claims in state court, a result clearly rejected by the federal courts." (citing *Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674, 678 (9th Cir. 2009))).) To make an *England* reservation, Plaintiffs had to "inform the state courts . . . that [they intended], should the state courts hold against [them] on the question of state law, to return to the District Court for disposition of their federal contentions." 375 U.S. at 421. However, a review of Plaintiffs' petition for writ of administrative mandate discloses no *England* reservation. (*See* Def.'s RJN Ex. A.) Accordingly, Plaintiffs have not reserved their right to litigate their federal claims in federal court.

Third, Plaintiffs claim that California's *Kavanau* adjustment procedure required Plaintiffs to split their petition for writ of mandate from their damages claims, and that claim splitting pursuant to *Kavanau* "will not result in res judicata." (Opp'n 4–5; *see Kavanau*, 941 P.2d at 863; *see also Los Altos*, 583 F.3d at 680 n.2 ("California requires plaintiffs to first exhaust their administrative remedies before their takings causes of action become ripe for adjudication in the state courts."); *Carson*

---

[10] The Court recognizes that the Ninth Circuit has not always spoken with one voice regarding whether the fair return analysis is the touchstone of Plaintiffs' regulatory taking claim. *Compare MHC*, 420 F.3d at 1031–32 (holding that res judicata barred, *inter alia*, the plaintiff's regulatory taking claim because the plaintiff had "already litigated its right to a fair return in state court"), *with Guggenheim*, 582 F.3d at 1022–23 ("The fact that the Park Owners earned some return on investment is not, as the district court reasoned, the end of their [regulatory taking] claim. Even if the Park Owners earned some return on investment, a taking may have occurred."). However, given its factual similarity to this case, the Court follows *Manufactured Home Communities* here.

1  *Harbor*, 353 F.3d at 828 ("Under *Kavanau* and *Galland* . . . a landowner must seek a writ of mandate
2  and *Kavanau* adjustment before bringing an inverse condemnation or [§ 1983] action in state court.").)
3  Plaintiff sees the *Kavanau* adjustment procedure as fundamentally irreconcilable with the Ninth
4  Circuit's holding in *Manufactured Home Communities*. The Court does not.

5  As the Court sees it, Plaintiff had two options. First, Plaintiffs could have pursued their
6  constitutional claims in state court. *See MHC*, 420 F.3d at 1032 (holding that substantive due process,
7  equal protection, and taking claims "either have been or should heave been raised in state court"); *cf.*
8  *San Remo Hotel*, 545 U.S. at 346 ("It is hardly a radical notion to recognize that, as a practical matter,
9  a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts.").
10 Second, Plaintiffs could have reserved their right to litigate their federal claims in federal court under
11 *England*. *See Los Altos*, 583 F.3d at 686–88; *Hacienda Valley*, 353 F.3d at 661 ("Hacienda may
12 reserve its federal claims while it pursues state remedies. If the California courts do apply an
13 unconstitutionally deferential standard of review, Hacienda's taking claim will not be precluded on
14 appeal to federal courts because the issue will not have been properly litigated in state court."). "An
15 *England* reservation is sufficient to avoid the doctrine of claim preclusion." *Los Altos El Granada*
16 *Investors v. City of Capitola*, 2010 WL 3835665, at *2 (N.D. Cal. Sept. 29, 2010) (citing *San Remo*
17 *Hotel, L.P. v. San Francisco*, 364 F.3d 1088, 1094 (9th Cir. 2004)); *see also Los Altos*, 2010 WL
18 3835665, at *3–4 (finding that res judicata did not bar plaintiff's regulatory taking, private taking,
19 equal protection, and due process claims because plaintiff made an *England* reservation in an earlier
20 state court action). If Plaintiffs had made an *England* reservation in the state action, the judgment in
21 the state action would not have imposed a res judicata bar to Plaintiffs' federal claims. However,
22 because Plaintiffs did not make an *England* reservation in the state action, res judicata bars Plaintiffs'
23 federal claims here. *See MHC*, 420 F.3d at 1031–32.

24 **IV.  The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Inverse**
25 **Condemnation Claim**

26 As discussed *supra*, Plaintiffs' regulatory taking claim is unripe and barred by res judicata, and
27 Plaintiffs' equal protection, private taking, and substantive due process claims are barred by res
28 judicata. Because the Court will dismiss these claims, it will not retain jurisdiction over Plaintiffs'

inverse condemnation claim.

Plaintiffs' inverse condemnation claim arises under California law and Defendants are state governmental entities. Diversity jurisdiction is not present here as Plaintiffs and Defendants are all California residents. As such, the Court has no subject matter jurisdiction over the claims. This alone counsels in favor of dismissing the remaining claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Although the Court could retain jurisdiction over Plaintiffs' inverse condemnation claim pursuant to 28 U.S.C. § 1367(c)(3), issues of comity make declining jurisdiction the obvious choice. A California citizen is suing California governmental entities under California law. California has an overwhelming interest in adjudicating this claim in its state courts. Therefore, the Court declines supplemental jurisdiction and **DISMISSES** Plaintiffs' inverse condemnation claim **WITHOUT PREJUDICE**. *See Abeel v. Summit Lending Solutions, Inc.*, 2010 WL 1445179, at *4 (S.D. Cal. Apr. 9, 2010) ("Where a district court declines to exercise supplemental jurisdiction, the state law claims should be expressly dismissed without prejudice." (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999))).

## CONCLUSION

Amendment of Plaintiffs' complaint cannot ripen Plaintiffs' regulatory taking claim or change the fact that res judicata bars Plaintiffs' federal claims. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs first, second, third, and fourth causes of action **WITH PREJUDICE** for the reasons stated herein. *See Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (holding that district court does not abuse its discretion in denying leave to amend if amendment would be futile). Plaintiffs fifth cause of action for inverse condemnation is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall close the file.

DATED: November 2, 2010

Honorable Janis L. Sammartino
United States District Judge